AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>DERRICK BURNEY<br><br>*Defendant(s)* | Case No. 3:17-mj-1395-MCR |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   10/24/17 through and including 10/27/17   in the county of   Duval   in the   Middle   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(g)(1), Title 21, United States Code, Section 841(a)(1) | Possesion of a firearm by a convicted felon and two counts of distribution of a controlled substance, to-wit: marijuana |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

William H. Grover, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/27/2017

_____
*Judge's signature*

City and state:   Jacksonville, Florida       Honorable Patricia D. Barksdale
*Printed name and title*

## AFFIDAVIT

I, William Howe Grover, being duly sworn, declare and state the following:

1. I submit this affidavit in support of a complaint, charging DERRICK BURNEY (hereafter, "BURNEY") with possessing a firearm in or affecting interstate or foreign commerce, after having been convicted of a crime punishable by imprisonment for more than one year in violation of Title 18, United States Code, Section 922(g)(1) and two counts of distribution of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Jacksonville, Florida Division. I have been a Special Agent with the FBI for 15 years, which includes twenty weeks of training at the FBI Academy, which I completed successfully. After the Academy, I was assigned to the Washington Field Office where I served on the Counter Intelligence Squad for 2 years and the Safe Streets and Gang squad for 4 years. In July 2009, I was promoted to Supervisory Special Agent for the Safe Streets and Gang Unit at FBI Headquarters. In July 2012, I transferred to the Jacksonville Field Office to supervise the Division's Intelligence Collection Squad. In August 2014, I was transferred to the Safe Streets and Gang squad of the Jacksonville Field Office. Prior to working with the FBI, I was a police officer for the Pembroke Pines Police Department in Pembroke Pines, Florida, for 5 years. As a uniformed patrol officer and K-9 handler, I was responsible for responding to emergency calls and traffic calls, initiating investigations, conducting interviews, and participating in surveillance operations and arrests. I am permitted to conduct criminal investigations of, and to make arrests for, federal firearms and narcotics offenses.

3. Throughout my law enforcement career, I have investigated cases dealing with violent crimes, including murder, rape, robbery and battery and cases involving the importation and distribution of illegal drugs, including cocaine, crack cocaine, heroin, ecstasy, and marijuana. During those investigations, I identified, opened and operated informants, conducted controlled drug purchases, physical surveillance, and wire surveillance. I have arrested numerous individuals for various violations to include drugs, and trafficking in sex acts. As such, I have debriefed these individuals and spoken with sex offenders, drug dealers, gang members, and informants concerning methods and practices utilized by these offenders. I have been the affiant on multiple search warrants, trap and traces, Title III intercepts, and arrest warrants and subsequently assisted in executing those warrants. I have provided testimony in state and federal court to include federal grand jury proceedings, trials, and suppression hearings. Based on the aforementioned training and experience I am familiar with the appearance and odor of the controlled substance marijuana. As part of my current duties and responsibilities, I investigate potential violations of federal law, including among others, a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1).

4. The information in this affidavit is based on my personal knowledge, as well as information, knowledge, and observations of other members of law enforcement. This affidavit does not contain all information discovered during this investigation, but only that believed necessary to provide a legal basis for the offenses charged.

5. As described below, a CHS made two recorded, controlled buys of marijuana from an individual that the CHS had identified previously as a drug dealer and

knew by the name "Pokie Wilson". During this investigation, I have been able to corroborate information provided by the CHS about "Pokie" through law enforcement databases, a review of the recordings made during these controlled buys from "Pokie", and statements and observations made by the CHS after directly interacting with "Pokie". Through the aforementioned investigative techniques, I was able to identify "Pokie" as DERRICK BURNEY. After I identified "Pokie" as BURNEY, I showed the CHS a JSO booking photograph of BURNEY that did not contain any other information. The CHS confirmed the identification of "Pokie" as the individual in the JSO booking photograph, i.e., BURNEY.

6. On the afternoon of October 24, 2017, the same CHS agreed to conduct a controlled buy of marijuana from BURNEY at 4713 Portsmouth Avenue, Jacksonville, Florida 32209 (hereafter, "Target Location"). Prior to going to the Target Location, the CHS met with law enforcement to include myself. The CHS and the vehicle of the CHS were searched by law enforcement and no contraband was located. Upon arrival at the Target Location, the CHS was greeted, at the rear door, by BURNEY, who the CHS previously identified as the marijuana dealer. After brief conversation, the CHS was allowed access into the Target Location for the purpose of conducting the drug transaction. The CHS provided BURNEY with $40.00 in FBI funds, previously provided to the CHS prior to the beginning of the operation. In exchange for the $40.00, BURNEY then provided the CHS with four, small, clear plastic baggies each containing a green leafy substance, which I later identified as marijuana based on my training and experience. During the drug transaction, the CHS and BURNEY engaged in conversation about several topics and the CHS took note of various firearms in plain sight of the CHS

while inside the Target Location. The CHS specifically noted an AK style rifle with a black extended magazine resting on the wall nearest the kitchen of the Target Location. The CHS also noted a black and brown shotgun laying on the top of the backrest of the couch. The CHS also noted a second AK style rifle located in the described living room area of the Target Location as well. Shortly after the transaction concluded, the CHS and BURNEY walked outside the rear door of the Target Location and through a covered carport on the side of the Target Location, ultimately returning to the driveway in the front of the Target Location. The CHS and BURNEY spoke for a short time while standing near the side of the Target Location. BURNEY raised his shirt as if to stretch or re-situate it on his body. As BURNEY did this, the CHS noted a black "Glock" pistol, exposed in his waistline. Law enforcement in the proximity were also able to observe what appeared to be a firearm in the waistline of BURNEY. Shortly after this, the CHS returned to their vehicle, departed the Target Location, and immediately met with law enforcement at a predetermined meeting location. At all times during the operation the movement and actions of the CHS were observed by members of law enforcement except when the CHS was inside the Target Location. The CHS and the CHS's vehicle were searched again by law enforcement and no contraband was located. The CHS provided the purchased marijuana to law enforcement who placed the drugs into the evidence room at the FBI. I reviewed the audio/video recording of the aforementioned controlled buy at the Target Location. My review of the audio/video recording confirmed the placement of the aforementioned firearms.

7. In the morning of October 25, 2017, the same CHS agreed to conduct a controlled buy of marijuana from BURNEY at the Target Location. Prior to the start of the operation, the CHS stated in substance that during the previous night, BURNEY acquired three more AK style rifles in the presence of the CHS. The CHS advised in substance that at approximately 21:00, a white male, approximately 32 years old, arrived at the Target Location with three AK style rifles. The white male then exchanged the rifles, with BURNEY, for approximately $200.00 and $100.00 worth of marijuana. Prior to going to the Target Location, the CHS met with law enforcement to include myself. The CHS and the vehicle of the CHS were searched by law enforcement and no contraband was located. Upon arrival at the Target Location, the CHS was greeted, at the rear door, by BURNEY, whom the CHS previously identified as the marijuana dealer. After brief conversation, the CHS was allowed access into the Target Location for the purpose of conducting the drug transaction. The CHS provided BURNEY with $40.00 in FBI funds, previously provided to the CHS prior to the beginning of the operation. BURNEY then provided the CHS with four, small, clear plastic baggies each containing a green leafy substance, which I later identified as marijuana based on my training and experience. During the transaction, the CHS and BURNEY engaged in conversation about several topics including the various firearms in plain sight of the CHS while inside the Target Location. The CHS specifically noted an AK style rifle with a black extended magazine, a black and brown shotgun, and .38-caliber "snub nose" revolver with a black handle. Shortly after the transaction concluded, the CHS and BURNEY walked outside the rear door of the Target Location and through a covered carport on the side of the Target Location, ultimately returning to the driveway in the

front of the Target Location. Shortly after this, the CHS returned to their vehicle, departed the Target Location, and immediately met with law enforcement at a predetermined meeting location. At all times during the operation the movement and actions of the CHS were observed by members of law enforcement except when the CHS was inside the Target Location. The CHS and the CHS's vehicle were searched again by law enforcement and no contraband was located. The CHS provided the purchased marijuana to law enforcement who placed the drugs into the evidence room at the FBI. I reviewed the audio/video recording of the aforementioned controlled buy at the Target Location. My review initially determined that due to an operational error, the video portion of the recording did not capture any evidentiary images. My review of the audio recording confirmed the conversation the CHS had with BURNEY regarding the firearms in the Target Location.

8. At the Target Location, on October 27, 2017, federal law enforcement agents to include myself executed a search warrant issued by the U.S. District Court for the Middle District of Florida. Upon executing the search warrant, law enforcement encountered BURNEY and three others males inside the Target Location. In the Target Location law enforcement located a SKS Norinco rifle, sawed off CBC shotgun, Western Arms Co. shotgun, Winchester rifle, approximately 80 rounds of ammunition, marijuana, and drug scales. The marijuana was packaged in multiple small plastic baggies. Based on my training and experience I recognize that packaging of this nature is consistent with someone that is selling controlled substances.

9. During a post-*Miranda*, custodial interview of BURNEY by ATF SA Mark Mutz, II, and me, BURNEY stated in substance and among other things, that he does sell

marijuana. He indicated that the firearms were not his. He indicated that he previously had been to Florida State Prison on one occasion.

10. I have viewed all of the firearms and consulted with ATF Interstate Nexus Expert SA Mark Latham. SA Latham confirmed that the SKS Norinco rifle, SN: 22002187B, was not manufactured in the State of Florida.

11. I have reviewed a copy of a National Crime Information Center record which indicated that BURNEY was adjudicated guilty of felony battery (one prior) domestic, a felony offense, in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, on or about February 7, 2003.

12. Based on the foregoing, I respectfully submit that there is probable cause to believe that BURNEY possessed a firearm in or affecting interstate or foreign commerce, after having been convicted of a crime punishable by imprisonment for more than one year in violation of Title 18, United States Code, Section 922(g)(1) and distributed marijuana, a Schedule I controlled substance, on two separate occasions, in violation of Title 21, United States Code, Section 841(a)(1).

WILLIAM HOWE GROVER
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 27th day of October, 2017

PATRICIA D. BARKSDALE
United States Magistrate Judge

7